# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DORIS KEETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10 C 5502 |
| v. ) | |
| ) | |
| MORNINGSTAR, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 12, 2010, Plaintiff Doris Keeton filed a five-count First Amended Complaint against her employer Defendant Morningstar, Inc. ("Morningstar") alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Before the Court is Morningstar's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Morningstar's motion and dismisses this lawsuit in its entirety.

## BACKGROUND[1]

Morningstar, a corporation doing business in Chicago, Illinois, is a leading provider of independent investment research. (R. 36, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) Since August 2002, Morningstar has employed Keeton, who is African-American, in its legal department as a Compliance Consultant. (*Id.* ¶¶ 2, 4.) Morningstar employs two other Compliance Consultants,

---

[1] Because Plaintiff failed to file any Northern District of Illinois Local Rule 56.1(b)(3) response, the uncontroverted statements in Defendant's Local Rule 56.1(a)(3) statement of facts are deemed admitted. *See Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009).

Lisa Derner and Rita Bentzler, who are white.  (*Id.* ¶¶ 6, 7.)  All Compliance Consultants report to Scott Schilling, Morningstar's Chief Compliance Officer.  (*Id.* ¶¶ 4, 6.)  Morningstar assigns each Compliance Consultant to one of its three subsidiaries that are registered investment advisors.  (*Id.* ¶ 8.)  Keeton's assigned subsidiary is Ibbotson Associates.  (*Id.*)  Compliance Consultants are responsible for ensuring that their respective subsidiary complies with all applicable federal securities laws.  (*Id.* ¶¶ 4, 8.)

Morningstar does not maintain any formal policies or practices for determining the base salaries of its Compliance Consultants and does not factor employee seniority at Morningstar into salary decisions.  (*Id.* ¶¶ 9, 11.)  Instead, Morningstar makes initial salary offers based on market factors, including the availability of qualified candidates and their salary requirements.  (*Id.* ¶ 10.)  Keeton, Bentzler, and Derner were all lateral hires with several years of experience at other firms before joining Morningstar.  (*Id.* ¶ 12.)  Morningstar offered all of the Compliance Consultants a higher base salary than what they were making at their prior employers.  (*Id.*)  At the time Derner was hired in April 2008, Keeton had a base salary of $68,000, and Bentzler had a base salary of $65,000.  (*Id.* ¶ 13.)  Derner, who was making $68,000 at her previous job, demanded a base salary of $70,000 to come to Morningstar – a demand Morningstar met.  (*Id.* ¶ 14.)

In February 2010, Morningstar's General Counsel Richard Robbins sought input from Schilling regarding potential salary increases for his direct reports, including Keeton, Bentzler, and Derner.  (*Id.* ¶¶ 31, 32.)  Schilling recommended that Keeton, Derner, and Bentzler all receive salary increases based on their 2009 performance evaluations, but recommended the smallest increase for Keeton because her performance review identified several areas in which

2

she needed improvement. (*Id.* ¶¶ 27, 33, 34.) The Compliance Consultants were awarded the following base salaries as of July 1, 2010 – $70,000 for Keeton, $73,000 for Derner, and $70,150 for Bentzler. (*Id.* ¶ 35.) Since March 10, 2010, Keeton has been on disability leave for medical reasons unrelated to this lawsuit, and Morningstar's salary adjustments took effect nearly four months after Keeton commenced her medical leave of absence. (*Id.* ¶¶ 35, 36.)

In June 2010, Keeton filed an EEOC charge alleging that "[d]uring my employment I discovered that I am being paid less than a non-Black coworker with less seniority and less qualifications." (R. 4, EEOC Charge at 2.) On June 11, 2010, the EEOC issued Keeton her right-to-sue letter. (*Id.* at 1.) Keeton filed the present lawsuit on August 31, 2010, and thus it is timely.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[2] A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167

---

[2] Effective December 1, 2010, Federal Rule of Civil Procedure 56 was amended. Among other changes, the summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and its wording was changed from "genuine issue" to "genuine dispute." Nevertheless, according to the 2010 Advisory Committee Notes, "the standard for granting summary judgment remains unchanged."

3

L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

I.  **Race Discrimination – Counts I and III**

In Counts I and III of her First Amended Complaint, Keeton alleges that Morningstar intentionally discriminated against her based on her race in violation of Title VII and 42 U.S.C. § 1981. *See Swearnigen-El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 860 n.6 (7th Cir. 2010) (courts apply the same standards for establishing race discrimination under Title VII and Section 1981). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To avoid summary judgment on her race discrimination claim, Keeton may use either the direct method or indirect method of proof pursuant to the familiar *McDonnell Douglas* framework. *See Naik v. Boehringer Ingelheim Pharm., Inc.,* 627 F.3d 596, 599 (7th Cir. 2010); *Egonmwan v. Cook County Sheriff's Dept.,* 602 F.3d 845, 849-50 (7th Cir. 2010). Because Keeton has not filed a Northern District of Illinois Local Rule 56.1(b)(3)(C) Statement of Additional Facts, she has not presented any direct evidence of race discrimination, therefore, the Court turns to the indirect method of proof.

To establish a prima facie case under the indirect method of proof, Keeton must show

4

that (1) she is a member of a protected class; (2) her job performance met Morningstar's legitimate expectations; (3) she suffered an adverse employment action; and (4) Morningstar treated similarly situated individuals outside of her protected class more favorably. *See Egonmwan,* 602 F.3d at 850; *Swearnigen-El,* 602 F.3d at 860. If Keeton establishes these four prima facie elements of race discrimination, the burden then shifts to Morningstar to offer a legitimate, nondiscriminatory reason for the adverse employment action. *See Naik*, 627 F.3d at 600. If Morningstar meets this burden, Keeton must demonstrate that the proffered reasons are pretext for discrimination. *See Egonmwan,* 602 F.3d at 850.

Courts often merge the second prima facie element, namely, whether the employee was performing to the employer's legitimate job expectations, with the pretext question because the issue of whether a plaintiff performed her job in a satisfactory manner lies at the heart of both questions. *See Hague v. Thompson Distribution Co.,* 436 F.3d 816, 822-23 (7th Cir. 2006). Here, Keeton cannot establish that she was performing to Morningstar's legitimate job expectations in the context of the July 2010 salary increases. *See Lucas v. PuraMax, Bank,* FSB, 539 F.3d 661, 666 (7th Cir. 2008) (unapproachable, unproductive employee with poor attitude did not meet employer's legitimate job expectations). More specifically, not only is undisputed that both Derner and Bentzler had better performance reviews than Keeton, Keeton's peer reviews reflect that she had problems with interpersonal skills, that she had a negative attitude, and that she was abrupt or abrasive in her approach with others. (*See* Def.'s Stmt. Facts ¶¶ 19-24.) Moreover, Schilling's performance review of Keeton specifically identified several areas of improvement, including cultivating better relationships. (*Id*. ¶ 27.) Based on these undisputed facts, Morningstar has proffered a legitimate, nondiscriminatory reason for giving Keeton the

smallest pay increase in July 2010. *See Naik*, 627 F.3d at 600. In addition, Keeton has failed to offer any evidence that Morningstar's proffered reason is pretext for discrimination. *See Egonmwan,* 602 F.3d at 850. In other words, she has not presented facts raising a genuine dispute as to any material fact for trial that Morningstar's explanation based on Keeton's performance review is dishonest. *See Everroad v. Scott Truck Sys., Inc.,* 604 F.3d 471, 479 (7th Cir. 2010) ("Pretext means a dishonest explanation, a lie rather than an oddity or an error.") (citation omitted).

Meanwhile, Morningstar has given a legitimate reason for why Keeton's base salary of $68,000 was lower than Derner's base salary of $70,000 when Derner was hired in 2008. More specifically, Morningstar explains that Derner was making $68,000 at her previous job and demanded a base salary of $70,000 to come to Morningstar, which Morningstar offered. Thus, Derner's base salary was the result of negotiations – not some prohibited animus. *See Wernsing v. Illinois Dep't of Human Servs.,* 427 F.3d 466, 468-69 (7th Cir. 2005) ("Employment-discrimination statutes forbid reliance on criteria such as race and sex" and '[p]rovided that they avoid these, employers are free to set their own standards."). In addition, it is undisputed that Morningstar does not factor employee seniority at Morningstar into its salary decisions. Again, Keeton has failed to argue, let alone establish, that Morningstar's profferred reason for this base pay difference is pretext for discrimination. *See Silverman*, 637 F.3d at 743-44 (pretext is "more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.") (citation omitted). As the Seventh Circuit has repeatedly explained, federal courts are not super-personnel departments second-guessing employers' business decisions. *See Stephens v. Erickson,* 569 F.3d 779, 788 (7th Cir. 2009).

6

Because Keeton has not presented facts raising a genuine dispute as to any material fact for trial concerning her claim based on the Compliance Consultant's pay differences, the Court grants Morningstar's summary judgment motion as to Counts I and III.[3]

## II. Retaliation – Counts II, IV, and V

Next, Keeton brings retaliation claims based on Title VII and Section 1981, which, like intentional discrimination claims, courts analyze in the same manner. *See Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848 (7th Cir. 2007). "Title VII of the Civil Rights Act of 1964 forbids retaliation against anyone who 'has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314 (7th Cir. 2011) (quoting 42 U.S.C. § 2000e–3(a)). A plaintiff may establish her retaliation claim under the direct or indirect method of proof. *See Weber v. Universities Research Ass'n, Inc.,* 621 F.3d 589, 592 (7th Cir. 2010).

"To avoid summary judgment under the direct method of proof for proving retaliation, a plaintiff must show: (1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two." *Silverman v. Board of Educ. of City of Chicago,* 637 F.3d 729, 740 (7th Cir. 2011); *see also Leitgen v. Franciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 673 (7th Cir. 2011). To establish a

---

[3] Keeton's response brief to the present summary judgment motion was due on or before May 3, 2011. The Court contacted Keeton's counsel on May 12, 2011 about the late response after which counsel informed the Court that he would be filing his response brief instanter on May 13, 2011. To date, counsel has not filed a response brief or motion for an extension of time. Because counsel failed to file a timely response brief to Morningstar's summary judgment motion, along with the requisite Local Rule 56.1 Statements, the Court has relied upon Keeton's First Amended Complaint and EEOC charge to discern her arguments.

prima facie case of retaliation under the indirect method of proof, Keeton must demonstrate two of the same direct method elements: (1) she engaged in a statutorily protected activity and (2) she suffered an adverse action. *See Silverman,* 637 F.3d at 742. The indirect method of proof also requires Keeton to show that she met Morningstar's legitimate job expectations and that Morningstar treated her less favorably than similarly situated employees who did not engage in the statutorily protected activity. *See id.*; *Hill v. Potter,* 625 F.3d 998, 1001 (7th Cir. 2010).

**A.     Retaliation for Conduct Before Keeton Filed EEOC Charge**

Keeton filed her EEOC charge in June 2010 alleging that Morningstar discriminated and retaliated against her because of her race. It is undisputed, however, that Keeton had been on medical leave since March 2010 when she filed her June 2010 EEOC charge. It is also undisputed that Keeton never complained to management or anyone in her department about race discrimination prior to filing her EEOC charge. (*See* Def.'s Stmt. Facts ¶ 57.) Further, there is no dispute that Morningstar's management in its Human Resources Department was aware of any conversations Keeton had with staff members before Keeton filed her EEOC charge. (*Id.* ¶ 60.)

"In order to establish retaliation pursuant to Title VII, the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory." *Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1122 (7th Cir. 2009). It is not sufficient than an employer could or should have known about an employee's complaint, instead, an employer must have actual knowledge of the employee's complaints of discrimination complaint before any of its decisions can be retaliatory. *See Hobbs v. City of Chicago,* 573 F.3d 454, 463 (7th Cir. 2009); *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 668 (7th Cir. 2006). Because it is undisputed

that Morningstar management did not have actual knowledge of Keeton's race discrimination complaints before she filed her EEOC charge, Morningstar cannot be liable for retaliating against Keeton for conduct occurring before she filed her charge. *See Nagle,* 554 F.3d at 1122. As such, the Court grants Morningstar's summary judgment motion as to Counts II and IV of her First Amended Complaint.

**B.     Retaliation Based on Conduct After Keeton Filed EEOC Charge**

During the course of this litigation, Morningstar brought a motion in limine to bar evidence and compel deletion of attorney-client privileged communications. More specifically, during discovery, Keeton produced a number of private, confidential e-mail communications between other Morningstar employees, including Morningstar's chief compliance officer, general counsel, and director of human resources. These e-mails contained legal advice from Morningstar's in-house and outside counsel. Pursuant to an internal investigation, Morningstar concluded that Keeton had improperly obtained the e-mails by using the company's enterprise vault surveillance software, which Keeton had access to as a Compliance Consultant. Compliance officers use the software to conduct discrete searches relating to Morningstar's affiliates' compliance with the federal securities laws. Morningstar maintains that it did not authorize Keeton to use this software to conduct personal searches or to obtain confidential e-mails.

Thereafter, on February 7, 2011, counsel for Morningstar sent Keeton's counsel an e-mail advising him that Keeton was in possession of attorney-client privileged communications without authorization. Morningstar's counsel requested the return of these e-mails and that upon return of these e-mails, counsel would produce all non-privileged communications that were

9

responsive to Keeton's discovery requests. Keeton's counsel refused Morningstar's request. Thereafter, Morningstar brought the motion in limine and to compel, and, on March 11, 2011, the Court granted Morningstar's motion.

In Count V of her First Amended Complaint, Keeton alleges that Morningstar's conduct during this discovery dispute was a "direct reaction" to her participation in the EEOC complaint process. Because Keeton has not set forth any evidence or argument under the direct method of proving retaliation, the Court turns to whether she can establish her retaliation claim under the indirect method of proof. As discussed above, Keeton has failed to set forth sufficient evidence raising a genuine dispute as to any material fact that she was meeting Morningstar's legitimate job expectations when she received a smaller pay increase in July 2010 based on her performance reviews. *See Silverman,* 637 F.3d at 742.

In addition, there is no evidence in the record that Morningstar treated Keeton less favorably than similarly situated employees who did not engage in the statutorily protected activity. *See LaBella Winnetka, Inc. v. Village of Winnetka,* 628 F.3d 937, 942 (7th Cir. 2010) (similarly situated employees must be directly comparable in all material respects). To clarify, through negotiations, Morningstar made a business decision to offer Derner a base salary that was $2,000 higher than Keeton's salary at the time Morningstar hired Derner. Thus, the situation in hiring Derner and Keeton was not directly comparable in all material aspects because the difference of base salary was due to labor market forces at the time Morningstar hired Derner and Derner's prior experience and pay in the industry. *See Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 697 (7th Cir. 2006) ("We have held that an employer may take into account market forces when determining the salary of an employee"); *see, e.g., Lloyd v. Swifty Transp., Inc.,* 552

F.3d 594, 599 (7th Cir. 2009).

Finally, Morningstar brought the motion in limine to bar evidence and compel deletion of attorney-client privileged communications – that the Court granted – because Keeton was wrongfully in possession of privileged documents. This is common discovery practice and Morningstar's conduct was warranted under the circumstances. Accordingly, the Court grants Morningstar's summary judgment motion as to Count V of the First Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Morningstar's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(a).

**Date:** May 23, 2011

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Court Judge**